IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MOHAMED NURENI ABUBAKAR,<br><br>Defendant. | Case No. 1:26-MJ-408 |

**AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT**

I, Officer Miguel Lugo, being duly sworn, depose, and state:

1. I am a Police Officer with the Central Intelligence Agency (CIA) in Fairfax County, Virginia. I have been employed with CIA Police (CIAP) since 2025. I graduated from the Federal Law Enforcement Training Center in May 2026, after which I received an additional twelve weeks of CIA-specific training. For approximately 8 years prior to CIA, I was a law enforcement officer in Austin, Texas. During this time, I received specialized training for special weapons and tactics and driving while impaired enforcement. Preceding my employment as a law enforcement officer, I was an active marine for four years.

2. This affidavit is submitted in support of a criminal complaint charging the defendant, MOHAMED NURENI ABUBAKAR ("ABUBAKAR"), with a violation of Title 21, United States Code, Section 844(a).

3. The facts and information contained in this affidavit are based upon my personal knowledge and observations, information conveyed to me by others, and my review of documents and other evidence. This affidavit contains information necessary to support probable cause, but it is not intended to include every fact and matter observed by me or known to the United States.

## STATUTES CHARGED

4. Title 21 of the U.S. Code, Section 844(a), states, in part, "It shall be unlawful for any person knowingly or intentionally to possess a controlled substance unless such substance was obtained directly, or pursuant to a valid prescription or order, from a practitioner, while acting in the course of his professional practice, or except as otherwise authorized by this subchapter or subchapter II… Any person who violates this subsection may be sentenced to a term of imprisonment of not more than 1 year …." Title 21 of the U.S. Code, Section 802(6), states, "[t]he term 'controlled substance' means a drug or other substance, or immediate precursor, included in schedule I, II, III, IV, or V of part B of this subchapter."

## SUMMARY OF FACTS TO SUPPORT PROBABLE CAUSE

5. On or about Sunday, October 11, 2026, I was working in a mobile unit at CIA Headquarters in Fairfax County, Virginia, which is within the special maritime and territorial jurisdiction of the United States and within the Eastern District of Virginia.

6. At CIA Headquarters, a vehicle entering the restricted lanes toward the CIA main gate passes numerous signs clearly delineating prohibited activities, including presence without authorization and possessing controlled substances. Persons entering the restricted lanes must either turn around, continue toward the primary police checkpoint for authorized vehicles, or turn into the Visitor Control Center (VCC) area located approximately 1,100 feet inside CIA property. Both the primary police checkpoint at the main gate and the VCC serve as entry points to the secure area within the CIA fenceline.[1] After normal business hours and on weekends, motorists seeking access to the main gate are diverted through the VCC area. Before entry is allowed into the VCC parking lot, motorists approach a VCC kiosk, at which there is a badge reader for the

[1] The fencing is not co-located with the CIA property line, i.e., the property line extends past the fencing.

scanning of CIA-issued credentials, as well as a camera and microphone to communicate with motorists who do not have scannable credentials. Once an individual scans the badge, officers confirm its validity and then lift a barrier to allow entry into the VCC parking lot.

7. At approximately 1:00 a.m. on October 11, 2026, officers observed a vehicle approach the VCC kiosk. Officers allowed entry to the first vehicle after the driver scanned validated credentials. However, officers observed via the camera system that a black Buick Envision SUV (SUV) followed immediately behind the first vehicle, gaining unauthorized access to the VCC parking lot. Officers relayed this information to additional units, at which time I observed the SUV driving in the VCC parking lot in a position parallel and to the left of the lead vehicle. This driving behavior caused the SUV to cross over marked parking spaces in what appeared to be an attempt to pass the authorized vehicle. Officers approached the SUV, which stopped abruptly and the driver exited without prompting, leaving the front driver's side door open. Given the early morning hour, the driver's behavior at the kiosk and the unpredictable driving behavior, officers verbally directed the driver to a kneeling position for officer safety. The driver was hesitant to obey verbal commands but ultimately complied. As I handcuffed him, I noticed an odor of marijuana coming from his person.

8. Additional officers observed through the SUV's open door and windows what appeared to be a large box in the backseat. The box contained white tubing and wires extending out, threaded between the second-row seats in the direction of the trunk. Officers then established a perimeter around the vehicle, repositioned vehicles to provide cover, locked down the area, and bomb technicians were dispatched to the scene for a possible improvised explosive device. The driver was also frisked for officer safety and to determine if a remote initiation device was on his person. The frisk revealed a cell phone, airpods, and a lighter.

9. I mirandized the driver, whose demeanor cycled between cooperative, evasive, and belligerent. After relocating the driver to a safe stand-off distance, I asked the driver a series of questions as he had no license or identifying information on him. The driver self-identified as "Mohamed Abubakar", provided a phone number registered to the same name, described the box in his vehicle as a scanner, and stated that he had driven 12 hours from Kentucky to speak to someone at the CIA about employment.

10. As I continued to speak with the driver, I observed that his pupils were constricted. Based on my knowledge, training, and experience, I believed the driver had been exposed to or had ingested a controlled substance. Once the scene was cleared of potential explosives, I began conducting Standard Field Sobriety Tests (SFSTs). Once the driver failed the Horizontal Gaze Nystagmus test, he refused to cooperate with instructions and became increasingly agitated. To avoid further escalation, no further SFSTs were conducted, and the driver was placed in a cruiser.

11. As I subsequently approached the vehicle to assist with searching it prior to towing, I detected the odor of marijuana emanating from the vehicle. I observed rolling papers near the gear shift and learned that officers retrieved a plastic bag of a green leafy substance from the driver's side door. An officer field-tested the green leafy substance, which was identified as marijuana. I know marijuana to be a Schedule I controlled substance.

12. A criminal records check revealed the defendant was charged on or about December 23, 2025, with Kentucky Revised Statute (KRS) § 218A.1422 for Possession of Marijuana, and KRS § 508.070 for Wanton Endangerment in the Second Degree; he was convicted of both. The defendant was also found guilty on March 3, 2026, of Terroristic Threatening in the Third Degree under KRS § 508.080 and sentenced to 365 days imprisonment with 355 days suspended. Consequently, the defendant was on unsupervised release at the time of the instant

offense. An additional check on the Buick's license plate resolved to a business consistent with a rental company.

## CONCLUSION

I respectfully submit that the foregoing facts in this affidavit demonstrate probable cause to believe that, on or about October 11, 2026, within the special maritime and territorial jurisdiction of the United States, in the Eastern District of Virginia, MOHAMED NURENI ABUBAKAR violated 21 U.S.C. § 844(a).

Respectfully submitted,

Miguel Lugo

Officer Miguel Lugo
Central Intelligence Agency Police

Respectfully submitted and attested to in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on October 12, 2026 at 11:45 A.M.

Digitally signed by Ivan Davis
Date: 2026.10.12 12:17:21 -04'00'

Ivan D. Davis
United States Magistrate Judge

Alexandria, Virginia